IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TALIA ROSE HALFORD,

    Plaintiff,

v.                                                                              CV 19-0413 JHR

ANDREW SAUL,
Commissioner of Social Security,

    Defendant.

## MEMORANDUM OPINION AND ORDER

    This matter comes before the Court on Plaintiff Talia Rose Halford's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 17], filed September 26, 2019. The parties have consented to the undersigned Magistrate Judge resolving Ms. Halford's Motion and entering Final Judgment in this appeal of the Commissioner's administrative denial of social security benefits pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b). [Docs. 4, 6 & 7]. Having reviewed the parties briefing and the Administrative Record ("*AR*"),[1] the Court **grants** Ms. Halford's Motion, **reverses** the Commissioner's Final Decision denying her benefits under the Social Security Act, and **remands** this case for further administrative proceedings.

### I.    INTRODUCTION

    The reversible error Ms. Halford contends the Commissioner committed in her case is not new to this Court, nor is it an open question in the Tenth Circuit. *See Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992). As this Court has discussed in nine (9) previous opinions issued since 2018, a denial of benefits premised upon the administrative finding that a claimant retains the capacity

---

[1] Documents 11 through 11-21 comprise the sealed Certified Transcript of the Administrative Record ("*AR*") for this appeal. The Court cites the Record's internal pagination, rather than the CM/ECF document and page numbers.

to perform a "significant number" of jobs in the national economy at Step Five of the sequential evaluation process applicable to social security claims must be supported by a claimant-specific, factual, analysis - unless so many jobs are identified that such an analysis is rendered unnecessary as a matter of law (at least 152,000 jobs in the Tenth Circuit). *See Romero v. Saul*, CV 19-0092 JHR, Doc. 32, 2020 WL 1677074 (D.N.M. Apr. 6, 2020) (unpublished); *Lucero v. Saul*, CV 19-0114 JHR, Doc. 25, 2020 WL 1495285 (D.N.M. Mar. 27, 2020) (unpublished); *Ammons v. Saul*, CV 18-1212 JHR, Doc. 23, 2020 WL 1434247 (D.N.M. Mar. 23, 2020) (unpublished); *Salazar Trujillo v. Saul*, CV 18-1134 JHR, Doc. 25, (D.N.M. Jan. 21, 2020) (unpublished); *Figueroa v. Saul*, CV 18-0885 JHR, 2019 WL 3766184 (D.N.M. Aug. 9, 2019) (unpublished); *Laney v. Berryhill*, CV 17-1062 JHR, Doc. 20, 2019 WL 586660 (D.N.M. Feb. 12, 2019) (unpublished); *Roybal v. Berryhill*, CV 17-1045 JHR, Doc. 26, 2019 WL 318387 (D.N.M. Jan 24, 2019) (unpublished); *Crockett v. Berryhill*, CV 17-0955 JHR, 2018 WL 6250602 (D.N.M. Nov. 29, 2018) (unpublished); *Brandenburg v. Berryhill*, CV 17-0507 JB/JHR, Doc. 27, 2018 WL 4328032 (D.N.M. May 25, 2018), *report and recommendation adopted*, 2018 WL 3062591 (D.N.M. June 21, 2018) (unpublished).

Prior decisions by judges in the District of New Mexico, while typically "unpublished," are not inaccessible to litigants in present cases. Ms. Halford cites *Roybal* and *Laney* in her opening brief, [Doc. 17, p. 6-7], and *Roybal* again in her reply brief. [Doc. 25, pp. 2-4]. The Commissioner's response brief, which attempts to distinguish those two cases and points to another originating in this district, demonstrates that he is just as able to access pertinent cases.[2] Thus, while the Court could not reasonably expect the Commissioner to be aware of the four (4) cases decided after his response brief was filed in this case, the five (5) decisions issued before he responded on December

---

[2] Moreover, he, by virtue of his office, was a party to every decision cited.

20, 2019 provide substantial support for Ms. Halford's position that a *Trimiar* analysis was required in her case, where the Administration relied on twelve thousand nine hundred (12,900) jobs to deny benefits.[3] Thus, the result here should come as no surprise.

As the Tenth Circuit has held and this Court has reiterated, a federal district court reviewing an administrative determination of nondisability is prohibited from supplying factual inferences supporting a denial of benefits at Step Five of the sequential evaluation process (where the burden shifts to the Administration to show a claimant can still work) in the absence of the factually specific analysis mandated by the Tenth Circuit in *Trimiar*. *See Allen v. Barnhart*, 357 F.3d 1140, 1144-1145 (10th Cir. 2004) ("Unless we could hold as a matter of law—and thus not fact, which is beyond our purview—that one hundred is so large a number as to conclusively establish the requisite numerical significance, *Drapeau* [*v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001),] precludes affirmance here just as *Trimiar* does."). In other words, the Tenth Circuit has repeatedly cautioned this Court against finding that jobs totaling less than 152,000 are "significant" enough to meet the Commissioner's burden to show that a claimant remains capable of, and is able to access, work which actually exists within the national economy - at least in cases where the Administration has not independently reached that conclusion through a reasoned, factually supported, claimant-specific, analysis. *See Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016) (unpublished) ("As *Trimiar* pointed out, there is no bright-line answer to how many jobs are enough for a court to say, as a matter of law, that the number is significant, but the number appears to be somewhere between 100, the number of jobs in *Allen* that we refused to consider significant

---

[3] In fact, in *Figueroa*, which was issued on August 9, 2019 (over three (3) months before the Commissioner filed his response brief), this Court held that, absent the claimant-specific factual analysis dictated by *Trimiar*, fifty-six thousand (56,000) national jobs were not "significant" enough to merit the application of the harmless error doctrine as a matter of Tenth Circuit law. *See* CV 18-0885 JHR, Doc. 21. Thus, the last decision the Court issued before the Commissioner's response was filed in this case addressed an almost identical claim of error applied to roughly five (5) times as many jobs are as at issue here – twelve thousand, nine hundred (12,900).

for harmless-error purposes, and 152,000, the lowest number of jobs we have considered (in *Stokes*[ *v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (unpublished)]) to be sufficient so far for application of harmless error.").

As it must, this Court has applied *Trimiar* and the Tenth Circuit cases construing it in the decisions cited above, each time finding against the Commissioner. Yet, despite the position he again takes in this case, to this Court's knowledge, the Administration has yet to appeal any of its *Trimiar*-based rulings (and the time for doing so has lapsed). Without a contrary opinion from the Tenth Circuit, the Commissioner has failed to empower this Court to reconsider its prior rulings. It is black letter law that this Court is bound by the doctrine of stare decisis to follow its prior rationale in the absence of compelling reason to revisit that reasoning. Stare decisis, "[t]he doctrine of precedent, under which a court must follow earlier judicial decisions when the same points arise again in litigation[,]" binds this Court to its prior reasoning unless a present litigant demonstrates "urgent reasons" to depart from that reasoning in an "exceptional case[.]" BLACK'S LAW DICTIONARY (11th ed. 2019) (quoting William M. Lile et al., Brief Making and the Use of Law Books, 321 (Roger W. Cooley & Charles Lesley Ames eds., 3d ed. 1914)). As the Supreme Court has reiterated, "[o]verruling precedent is never a small matter [because] … [a]dherence to precedent is 'a foundation stone of the rule of law.…' [I]t promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" *Kisor v. Wilkie*, 139 S.Ct. 2400, 2422 (2019) (quoting *Kimble v. Marvel Entertainment, LLC*, 135 S.Ct. 2401, 2409 (2015); *Michigan v. Bay Mills Indian Community*, 572 U.S. 782, 798 (2014); and *Payne v. Tennessee*, 501 U.S. 808, 827 (1991)).

Despite his continued reluctance to acknowledge this Court's decisions addressing the "significant numbers" issue in district-level appeals brought against the Administration since 2018, the Commissioner has not demonstrated that this is an exceptional case meriting reconsideration of the Court's prior holdings. Therefore, for the reasons that follow, the Court again finds against the Commissioner on the "significant numbers" issue and reverses and remands his Final Decision in this case for further fact finding and analysis because he failed to apply binding Tenth Circuit law requiring a claimant-specific analysis in these circumstances, the absence of which rendered his partial denial of benefits unsupported by substantial evidence.

## II.  PROCEDURAL HISTORY

Ms. Halford applied for supplemental security income benefits under Title XVI of the Social Security Act on May 12, 2011. *AR* at 166-174. She later filed an application for disability insurance benefits under Title II of the Act on August 12, 2011. *AR* at 177-178. In both applications Ms. Halford alleged a disability onset date of November 2, 1999 due to, as summarized by the Administration, "[v]arious residuals from auto accident, disk problems; ptsd; brain injury; fibromyalgia; loss of full use of limbs; insomnia; [and,] hypothyroid." *See AR* at 62, 166, 177. The Administration denied Ms. Halford's applications at the initial and reconsideration stages of review, so she requested a de novo hearing before an administrative law judge ("ALJ"). *AR* at 60-103, 108-115, 122-123.

ALJ Michelle Lindsay held a hearing on Ms. Halford's applications on October 2, 2012, at which Ms. Halford and Vocational Expert ("VE") Thomas Greiner were questioned by ALJ Lindsay and Ms. Halford's attorney. *See AR* at 23-58, 159. Among other things, Ms. Halford testified that she had not worked since 2010 due to pain and her inability to stand or sit for extensive periods of time. *See AR* at 32. She traced her symptoms to a car accident in 1999, which resulted

in severe cervical and thoracic pain, PTSD, depression, insomnia, incontinence, and migraines. *See AR* at 39-43. Nonetheless, when questioned by ALJ Lindsay, VE Greiner testified that a hypothetical person with Ms. Halford's limitations would be able to work as a bakery worker, an electronics worker, and a fruit distributor. *AR* at 55. Relying on these jobs, ALJ Lindsay issued an unfavorable decision on February 25, 2013, which was affirmed by the Appeals Council on June 26, 2013, *AR* at 1-21, 1831-1845, rendering ALJ Lindsay's decision denying benefits the first Final Decision of the Commissioner for the purposes of this case. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

Ms. Halford appealed the Commissioner's first Final Decision via a Complaint filed in this Court on August 27, 2013. *See AR* at 1389-1390. On March 3, 2015, District Judge Gonzales adopted the report and recommendation of Magistrate Judge Garza and remanded Ms. Halford's case to the Administration for failure to properly weigh a treating doctor's opinion. *See AR* at 1392-1411. The Appeals Council then vacated the final decision of the Commissioner and remanded Ms. Halford's case to a different ALJ for further proceedings consistent with Magistrate Judge Garza's recommendation and Judge Gonzales' judgment on April 10, 2015. *AR* at 1412-1414.

Ms. Halford's remanded case was assigned to ALJ Lillian Richter, who convened a second hearing on October 21, 2015, at which Ms. Halford and VE Mary Webber were questioned by ALJ Richter and Ms. Halford's attorney. *See AR* at 1297-1336. After the hearing, ALJ Richter issued an unfavorable decision on January 5, 2016 (dated January 8, 2016), concluding that Ms. Halford remained capable of working as an addresser, table worker, and stone setter. However, ALJ Richter reopened Ms. Halford's case in order to address a document Ms. Halford's attorney submitted on January 4, 2016 by a notice of reopening dated January 6, 2016. *See AR* at 1257-1288, 1543-1544.

A third hearing was convened before ALJ Richter on April 14, 2016, *see AR* at 1337, and, while Ms. Halford was again questioned by ALJ Richter and her attorney, the focus of the hearing was the testimony of Dr. Gerald Fredman. *See AR* at 1337-1386. By contrast, VE Greiner was present via phone but was not questioned during the hearing. *AR* at 1386. After the hearing, ALJ Richter issued a revised unfavorable decision on August 9, 2016, ultimately reaching the same conclusion as she had in January of that year - that Ms. Halford retained the capacity to work as an addresser, table worker, and stone setter. *AR* at 1886-1921. The Appeals Council did not assume jurisdiction over the case, so ALJ Richter's decision became the second Final Decision of the Commissioner. *See* 20 C.F.R. §§ 404.984(d), 416.1484(d), which Ms. Halford appealed to this Court. *See AR* at 1802-1826, CV 16-1267 CG, Docs. 1, 24. This time, the parties consented to Magistrate Judge Garza presiding over Ms. Halford's appeal. After briefing, Magistrate Judge Garza again found in Ms. Halford's favor and granted her a second remand because she found that ALJ Richter did not properly weigh several doctors' opinions, including Dr. Fredman's. *See AR* at 1802-1826.

Once Ms. Halford's appeal was remanded to the Administration, the Appeals Council again remanded it to an ALJ with instructions to comply with Magistrate Judge Garza's judgment and take any further action needed to complete the administrative record and issue and new decision. *AR* at 1829. The case was again assigned to ALJ Richter, who held a fourth de novo hearing on Ms. Halford's claims on September 18, 2018. *AR* at 1759-1796. At the hearing, Ms. Halford's attorney amended her disability onset date to May 12, 2010, a year prior to her application date. *AR* at 1764. Ms. Halford again appeared and testified, as did VE Karen Provine. *See AR* at 1760.

As is her prerogative under the pertinent regulations, ALJ Richter asked VE Provine whether a hypothetical person with Ms. Halford's combined impairments is capable of working.

*AR* at 1788-1789. VE Provine responded affirmatively, stating that such a hypothetical person could work as an addresser (representing 5,700 national jobs), stuffer (4,200 national jobs) or a table worker ("just under 3,000" national jobs). In other words, VE Provine testified that there are roughly twelve thousand nine hundred (12,900) jobs in the United States of America that someone with Ms. Halford's conditions can perform. *AR* at 1789.

ALJ Richter adopted VE Provine's conclusion as her own and issued a partially favorable Final Decision on January 8, 2019. *See AR* at 1708-1747. ALJ Richter concluded that Ms. Halford retained the capacity to work as an addresser, stuffer or table worker from her amended alleged onset date through October 24, 2017. *Id.* On that date, according to ALJ Richter, considering her age, education, work experience, and residual functional capacity ("RFC"), "there [were] no jobs that exist in significant numbers in the national economy that [Ms. Halford] can perform." *See id.* Thus, Ms. Halford was awarded supplemental security income benefits[4] from that date forward. *Id.* While Ms. Halford filed timely written exceptions with the Appeals Council challenging ALJ Richter's partially favorable decision on January 23, 2019, the Council declined jurisdiction by letter on April 15, 2019, rendering ALJ Richter's January 8, 2019 decision the Final Decision of the Commissioner for the purposes of this appeal. *See AR* at 1701-1705. This Court has jurisdiction to review the Commissioner's Final Decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).[5]

---

[4] ALJ Richter's decision recognized that, because she found that Ms. Halford was not under a disability within the meaning of the Act at any time through December 31, 2002, her last date insured under Title II, she was not entitled to disability insurance benefits, but only supplemental security income benefits under Title XVI. *See AR* at 1746-1747.

[5] Ms. Halford initiated a timely appeal of the Commissioner's Final Decision by filing a Complaint in this Court on May 6, 2019. [*See* Doc. 1]. This Court entered a briefing schedule on July 9, 2019; each party was granted additional time to prepare her/his briefing; and, ultimately, a Notice of Completion of Briefing was filed February 10, 2020. [*See* Docs. 13, 15, 20, 24, 26].

### III.     THE COMMISSIONER'S FINAL DECISION IN THIS CASE

A claimant seeking social security benefits under the Act must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(l)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[6]

At Step One of the sequential evaluation process, ALJ Richter found that Ms. Halford has not engaged in substantial gainful activity since her amended alleged onset date – May 12, 2010. *AR* at 23. At Step Two, she determined that Ms. Halford

> has had the following severe impairments: obesity; degenerative disc disease of the thoracic spine status post thoracic discectomy; degenerative disc disease of the lumbar spine with lumbosacral spondylosis and an L5 pars defect; degenerative disc disease and spondylosis of the cervical spine with severe left sided neural foraminal narrowing at the C4-5 level and mild spinal canal stenosis; trochanteric bursitis; fibromyalgia; chronic pain syndrome; osteoarthritis including mild osteoarthritis of the feet; mild patellar degeneration of the left knee; plantar fasciitis of the left foot; migraines; post-traumatic stress disorder; mild neurocognitive disorder due to traumatic brain injury; insomnia; and depression. Beginning on the established onset date of disability, October 24, 2017, [Ms. Halford] has had the aforementioned impairments and in addition, probable early seronegative rheumatoid arthritis[.]

---

[6] The Tenth Circuit summarized these steps in *Allman v. Colvin,* 813 F.3d 1326, 1333 n. l (10th Cir. 2016):

> At step one, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). If not, the ALJ then decides whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ determines whether the impairment is "equivalent to a condition 'listed in the appendix of the relevant disability regulations.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). Absent a match in the listings, the ALJ must decide at step four whether the claimant's impairment prevents him from performing his past relevant work. *Id.* Even if so, the ALJ must determine at step five whether the claimant has the RFC to "perform other work in the national economy." *Id.*

*AR* at 1716. At Step Three, ALJ Richter concluded that Ms. Halford's combined impairments never met or medically equaled the regulatory "listings" which presumptively establish disability. *AR* at 1717-1720. Ms. Halford does not challenge ALJ Richter's findings at Steps One through Three in this appeal. [*See generally* Docs. 17, 25].

When a claimant does not meet a listed impairment at Step Three the ALJ must determine the extent to which she remains able to work (her RFC) before proceeding to identify past jobs she can still do at Step Four, or other jobs she can do despite her limitations at Step Five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). "RFC is not the least an individual can do despite his or her limitations or restrictions, but the most." SSR 96-8p, 1996 WL 374184, at *1. In this case, the ALJ determined that, prior to October 24, 2017, Ms. Halford retained the RFC to:

> perform a limited range of work at the sedentary exertional level … except [she] could occasionally stoop, kneel, crouch, and crawl; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and never balance. [She] should avoid exposure to unprotected heights, hazardous machinery, and vibration. [Ms. Halford] could frequently reach, handle, and finger bilaterally. [She] was limited to simple routine work. [She] was limited to occasional interaction with supervisors and coworkers and no interaction with the public. [Ms. Halford] was limited to a workplace with few changes in the routine work setting, and could not perform assembly line production work. [She] may require the use of a hand held (sic) assistive device for purposes of ambulation and may need to alternate from sitting to standing every 30 minutes for five minutes while remaining at the workstation.

*AR* at 1720. ALJ Richter then found that Ms. Halford's RFC was further reduced as of October 24, 2017, because she "may be unable to remain on task for two hours and may be unable to complete a scheduled shift three times a month, which would preclude competitive employment." *AR* at 1744.

Because Ms. Halford had no past relevant work, *see AR* at 1745, ALJ Richter moved on to Step Five, where she concluded that, based on VE Provine's testimony, Ms. Halford was able to work as an addresser (DOT # 209.587-010; 5,700 jobs in the national economy), a stuffer (DOT #

731.685-014-018; 4,200 jobs in the national economy), or a table worker (DOT # 739.687-182; 3,000 jobs in the national economy) before she became disabled on October 24, 2017. *AR* at 1745-1746. ALJ Richter further concluded that these 12,900 jobs "existed in significant numbers in the national economy" during the relevant period. *AR* at 1746. As such, ALJ Richter determined that Ms. Halford was entitled to Title XVI benefits from October 24, 2017 forward. *AR* at 1747.

## IV. LEGAL STANDARDS

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). "[T]he agency's 'failure to apply the correct legal standards, or to show [the Court] that it has done so' is 'grounds for reversal.'" *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 640 (10th Cir. 2018) (unpublished) (quoting *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

## V. ANALYSIS

As was explained in previous cases and is again explained below, the Commissioner must, as a matter of law, analyze a claimant's ability to access the jobs identified as within her RFC unless those jobs total over one-hundred and fifty-two thousand (152,000) in the national economy. Here, ALJ Richter failed to support her conclusion that Ms. Halford was not disabled prior to October 24, 2017 with substantial evidence because she failed to analyze whether the twelve-thousand and nine hundred (12,900) national jobs the VE identified as within Ms. Halford's RFC exist in "significant numbers" as applied to her individual situation. As such, the Commissioner's

Final Decision in Ms. Halford's case is neither legally nor factually supported, and must be reversed and remanded for further administrative proceedings.[7]

In *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992), the Tenth Circuit held that "[an] [administrative law] judge should consider many criteria in determining whether work exists in significant numbers[,]" including: "the level of the claimant's disability; the reliability of the vocational expert's testimony; the distance the claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the type and availability of such work, and so on." *Id.* at 1330 (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988), in turn quoting *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)). While this principle has been tempered over time and does not apply in cases involving over 152,000 national jobs in the Tenth Circuit,[8] *Trimiar* has never been overruled and remains good law. Thus, ALJ Richter was *required* by *Trimiar* to discuss factors pertinent to Ms. Halford's ability to access the 12,900 national jobs identified by VE Provine.[9]

---

[7] In addition to the Step Five error requiring remand, Ms. Halford argues that ALJ Richter violated the mandate rule by failing to comply with Magistrate Judge Garza's instructions when this Court last remanded her case to the Administration. [*See* Doc. 17, pp. 13-18]. Ms. Halford also initially raised an argument related to her disability onset date but has withdrawn it. [*See* Docs. 17, 25]. The Court will not address either argument because the issues they address "may be affected [or rendered moot] by the [Administration]'s treatment of [Ms. Halford's] case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bryant*, 2018 WL 6133387, at *5 (citing *Watkins* for this proposition).

[8] Under current Tenth Circuit precedent, an ALJ is not required to perform a *Trimiar* analysis where the number of national jobs at issue is "much larger" than the 650 to 900 regional jobs at issue there. *See Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). Thus, while the Tenth Circuit "has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number[,]'" *Trimiar*, 966 F.2d at 1330, it has indicated that the Commissioner's final decision should be affirmed and the error deemed harmless where an ALJ identifies at least 152,000 jobs that are consistent with a claimant's RFC. *See Evans*, 640 F. App'x at 736.

[9] As the Court has repeatedly stated, the pertinent regulation does not permit an ALJ to rely on "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [a claimant] live[s.]" *See* 20 C.F.R. §§ 404.1566(b), 416.966(b) ("Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered work which exists in the national economy."). Thus, an ALJ must evaluate each case on its individual merits to determine whether work exists in significant numbers in the national economy as applied to a given claimant's factual circumstances. *Trimiar*, 966 F.2d at 1330. This is because each case (like each claimant) is unique, and the "intrinsic" effects of a claimant's impairments may "prevent her from *accessing*

Despite the Commissioner's present position that ALJ Richter "explicitly found that 12,900 nationwide jobs was a significant number[]" and that the Court must, therefore, "defer to it under the highly-deferential substantial evidence standard[,]" [Doc. 22, p. 23], the truth is that the ALJ's significant numbers finding was supported only by boilerplate statements of legal principles followed by a description of VE Provine's testimony, more boilerplate statements, and a conclusory paragraph stating that Ms. Halford "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy[]" prior to October 24, 2017. *AR* at 1746. The Court is thus unconvinced by the Commissioner's attempt to distinguish its prior decisions in *Roybal* and *Laney* on the grounds that the *Trimiar* analysis was undertaken here, but not there. [*See* Doc. 22, p. 23].

Had the ALJ discussed the factors described in *Trimiar* or applied them to Ms. Halford's case, the Commissioner is correct that the Court would be required to review that analysis and conclusion for substantial evidence. However, in its absence, the Commissioner is left with nothing more than the "harmless error" doctrine and its cumulative effect on this issue over the span of the Tenth Circuit opinions applying it to the significant numbers question.[10] In other words, under

---

certain jobs in the local or national economy." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 906 (6th Cir. 2016).

[10] In pursuing this argument, the Commissioner points out that in *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (unpublished), the Tenth Circuit affirmed a case where the VE only identified 11,000 national jobs within the claimant's RFC. However, *Rogers* is distinguishable, for the reasons first discussed by this Court in *Roybal*:

> The Court is not convinced by this citation for two reasons. First, the claimant in *Rogers* did not argue that 11,000 was not a significant number. Thus, the Tenth Circuit's decision did not address the issue. Second, the only Tenth Circuit case the Court is aware of to have addressed *Rogers*, *Evans v. Colvin*, does not rely upon it to establish the minimum number of jobs to be enough for harmless error. *See Evans*, 640 F. App'x at 736 ("As *Trimiar* pointed out, there is no bright-line answer to how many jobs are enough for a court to say, as a matter of law, that the number is significant, but the number appears to be somewhere between 100, the number of jobs in *Allen* that we refused to consider significant for harmless-error purposes, and 152,000, the lowest number of jobs we have considered (in *Stokes*[ v. Astrue, 274 F. App'x 675, 684 (10th Cir. 2008)]) to be sufficient so far for application of harmless error."). Put another way, the Commissioner has given this Court no reason to rely on *Rogers* when the Tenth Circuit was unwilling to do so.

pertinent Tenth Circuit law where, as here, an ALJ identifies fewer than 152,000 national jobs at Step Five, she *must* consider the *Trimiar* factors to ensure that the claimant can adequately access those jobs. ALJ Richter's failure to do so in this case renders her decision unsupported as a matter of fact and contrary to Tenth Circuit law. Therefore, "because the ALJ failed to evaluate the *Trimiar* factors and make specific factual findings regarding the numerical significance requirement, [the Court] cannot properly review this issue[,]" *Rhodes v. Barnhart*, 117 F. App'x 622, 532 (10th Cir. 2004) (unpublished); *see also Allen*, 357 F.3d at 1144, and the Commissioner's final decision in this case must be reversed and remanded for further factual development and analysis.

## VI. <u>CONCLUSION</u>

As in prior cases involving the "significant numbers" issues, the Court is bound not only by its present interpretation of binding Tenth Circuit precedent but also by its prior reasoning because of the principles of horizontal and vertical stare decisis. *See, e.g.*, *Ammons*, CV 18-1212, Doc. 23, pp. 15-16 (Explaining that under horizontal stare decisis "a court … must adhere to its own prior decisions, unless it finds compelling reasons to overrule itself[,]" and that vertical stare decisis requires a court to strictly follow the decisions of higher courts in its jurisdiction) (quoting BLACK'S LAW DICTIONARY, 710 (Fourth Pocket Ed. 2011)). "To be sure, stare decisis is 'not an inexorable command.' But any departure from the doctrine demands 'special justification'— something more than 'an argument that the precedent was wrongly decided.'" *Kisor*, 139 S. Ct. at 2422 (quoting *Payne v. Tennessee*, 501 U.S. 808, 827 (1991), and *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 266 (2014)). The Commissioner has not even attempted to argue this

---

CV 17-1045 JHR, Doc, 26, pp. 10-11. The Commissioner's current reliance on the unpublished *Rogers* decision (which this Court first distinguished over a year prior to issuing this decision) and two non-binding district court decisions, one which is not even from this district, do not convince the Court that its decision to treat *Rogers* as an outlier is incorrect.

Court's prior decisions were wrongly decided and has not convinced the Court to alter its reasoning given the facts present here. Therefore, the ALJ was required to conduct a significant numbers inquiry in order to support her decision to deny Ms. Halford benefits at Step Five of the sequential evaluation process and, because she failed to do so, this Court has no choice but to reverse the Commissioner's partially favorable Final Decision and remand this case for further proceedings.

Wherefore, **IT IS THEREFORE ORDERED** that Plaintiff Talia Rose Halford's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 17], is **GRANTED**, the Commissioner's partially favorable Final Decision in this case is **REVERSED**, and Ms. Halford's claims are **REMANDED** for further proceedings consistent with this decision.

_____
Jerry H. Ritter
United States Magistrate Judge
*Presiding by Consent*